# UNITED STATES DISTRICT COURT
## OF MINNESOTA

**KYNTASHA ROBINSON,**
on behalf of herself and
all others similarly situated,

                       Plaintiff,                           Case No._____

v.

**BEST BUY CO., INC.,**

                       Defendant.
_____/

## CLASS ACTION COMPLAINT

### NATURE OF CASE

1.      Consumers, as a result of the modern lifestyle, are increasingly dependent on smart phones, tablets and laptop computers—portable electronic devices ("PEDs"). PEDs give consumers immediate access to information and instant communication with colleagues, friends, and loved ones.

2.      Like any electronic device, PEDs require power. Consumers must periodically recharge their PEDs which may be difficult if no outlet is available.

3.      To solve that problem, companies like Defendant Best Buy Co. ( "Best Buy") markets and sells portable chargers, also known as power banks.

4.      Power banks are small, portable power sources that connect to and charge consumers' PEDs. Power banks can be charged at home and then taken on the go. For example, a picture of a power bank charging a PED below.



5.     A power bank's ability to charge PEDs is measured in milliampere-hours ("mAh"). A power bank with a higher mAh has an enhanced ability to recharge PEDs compared to a power bank with a lower mAh—in short, it promises to deliver more "juice."

6.     Power banks are not fashion items or status symbols. Consumers do not buy power banks for intangible factors such as the products' looks, styling, or other soft features. Power banks are not usually serviced or repaired once sold; there is no significant relationship between the consumer and the company after purchase. The main point of buying a power bank is to have the ability to get more power.

7.     Accordingly, consumers prefer and are willing to pay more for power banks with a higher mAh.

8.     Technology companies are aware of this. For example, Best Buy, under its own brand, INSIGNIA, markets and sells a variety of models of power banks (which do not materially differ except to the extent they have different mAh ratings) hereafter referred to as the Products ("Products"). The various Product models Best Buy sells include (but are not limited to) the Insignia Portable Chargers with mAh representations: 2,600, 8,000, 12,000, 15,000 and

20,000. Apart from the represented mAh amounts, there is no material difference among Best Buy's Products. All of the Products are sold using a prominent and false representation that they have a certain mAh when in fact they all have less.

9.      Best Buy is a key player in the power bank market. The market generates more than $15 billion in sales each year for the industry as a whole.

10.     For profit and a higher market share, Best Buy exploits consumers' preferences for power banks with higher mAh. Best Buy intentionally deceives consumers by misrepresenting the amount of power its Products can transfer to PEDs. Best Buy advertises its Products as delivering more mAh than its Products are able to provide.

11.     Plaintiff Kyntasha Robinson relied on Best Buy's misrepresentations when she bought one of Best Buy's Products: the INSIGNIA 8,000 mAh Portable Charger. Best Buy advertises the INSIGNIA 8,000 as having 8,000 mAh; however the INSIGNIA 8,000 never could and cannot deliver 8,000 mAh. As a result, Ms. Robinson paid a premium for a Best Buy Product that did not work as represented and warranted.

12.     Ms. Robinson brings this proposed class action, individually and on behalf of classes of similarly situated consumers, against Best Buy. Ms. Robinson seeks redress for Best Buy's unlawful, unjust, unfair, and deceptive practices in misrepresenting the mAh of the Products and violating state law during the applicable statute of limitations period.

## PARTIES

13.     Plaintiff Kyntasha Robinson is an individual consumer who, at all times material, was a citizen and resident of Lawrenceville, Georgia.

14.     Defendant Best Buy Co., Inc. ("BB, Inc."), is a Minnesota corporation with its principal place of business at 7601 Penn Avenue South, Richfield, Minnesota. From Minnesota,

BB, Inc. distributes markets and directs the marketing of the Products throughout the United States.

## JURISDICTION AND VENUE

15.     This Court has general personal jurisdiction over Best Buy because Best Buy has its principal place of business in Minnesota. Best Buy has had continuous and systematic general business contacts in Minnesota and can be said to have reasonably anticipated being haled into court in Minnesota.

16.     This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), otherwise known as the Class Action Fairness Act ("CAFA"). In this case, the proposed plaintiff classes are comprised of at least 100 members, Kyntasha Robinson is a citizen of a State different from Best Buy, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs.

17.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a). Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information regarding the Products, occurred within this District.

## DETAILED ALLEGATIONS

### A) BEST BUY Markets Its Products By Emphasizing Their mAh.

18.     Best Buy is an international retailer of consumer electronics. With over 1,000 stores located within the United States, and 30 stores in Georgia alone, Best Buy is one of the largest and most prominent retailers in the nation.

19.     Best Buy manufactures, markets, and distributes for sale nationwide a number of models of Power Banks. It does so by prominently representing that the Products have a certain

mAh. Unfortunately for consumers, testing has shown the amount of mAh the Products actually have is substantially lower than what Best Buy represents.

20.     By deceiving consumers about the Products' mAh, Best Buy is able to sell more of, and charge more for, the Products than it could if they were labeled accurately. Further, Best Buy is incentivized to mislead consumers to take away market share from competing products, thereby increasing its own sales and profits.

21.     All of the Products are marketed, sold, and advertised in a substantially similar manner, and there is no non-trivial difference amongst the models other than the differences in purported mAh.

22.     Best Buy makes prominent representations about the Products' mAh on the packaging of all of its models. For Example:



23.     Best Buy draws attention to its Products' mAh by prominently displaying the mAh rating on advertising materials and the product package.

**B ) The Products Cannot Deliver The Full mAh Amount To PEDs As Advertised**

24.     Best Buy knew at the time it sold the Products that they were incapable of delivering the mAh it promised.

25.     In very basic terms, the Products consist of an internal battery cell (or series of batteries' cells) and a circuit board that controls the technology. The Products' circuit boards convert the internal batteries' charge to a voltage that PEDs, like cell phones, can accept.

26.     To convert and distribute the power from the Products to the PEDs, the Products use power from their own internal batteries. Running the internal circuit board and converting

power for charging PEDs is a process that uses a substantial percentage of the internal cells' power. On information and belief, Best Buy bases its mAh representations on the capacity of the internal cells. Best Buy's Products are therefore incapable of delivering the full advertised mAh to recharge a consumer's PED.

27.     This conversion and distribution process necessarily reduces the amount of mAh delivered into a PED.

28.     Reasonable consumers such as the Ms. Robinson read the advertised mAh and would expect and understand that the Products can actually deliver that mAh amount, not that they are incapable of doing so.

29.     Because of the process described above, Best Buy knows the Products are technologically incapable of delivering the amount of mAh Best Buy represents.

30.     Ms. Robinson hired an experienced and reputable outside laboratory to perform tests on the same model of INSIGNIA battery she purchased (INSIGNIA 8000), as well as on the 2600 mAh Product models. These tests were done in accordance with recognized engineering standards.

31.     100% of the Best Buy Products tested do not measure up to Best Buy's claims. The outside lab found that Best Buy's Products consistently failed to provide the mAh Best Buy advertised. Test results for the INSIGNIA Products the lab tested are below.

| mAh Represented | Actual mAh |
|---|---|
| 8000 | 5858 |
| 8000 | 5855 |
| 2600 | 1504 |
| 2600 | 1591 |

**C) BEST BUY Deceived And Made False Representations To Ms. Robinson And All Other Consumers About The INSIGNIA 8000's mAh**

32.     On November 7, 2018, while in Georgia, Ms. Robinson saw and relied on Best Buy's mAh representations about the INSIGNIA 8000.

33.     On INSIGNIA's package, Best Buy said that the INSIGNIA 8000 had "8000 mAh."

34.     Ms. Robinson purchased the INSIGNIA 8000.

35.     After purchasing the INSIGNIA 8000, Ms. Robinson was disappointed to find she was forced to recharge the INSIGNIA 8000 more often than she expected.

36.     Ms. Robinson, like any reasonable consumer and member of the putative classes, would not have purchased the Product, or would have paid less, had she known the truth about its mAh.

37.     On July 9, 2019, Ms. Robinson's counsel sent Best Buy a letter informing them of the harm caused by Best Buy's deceptive acts.

38.     Best Buy has not remedied the situation for Ms. Robinson or the classes that Ms. Robinson represents.

## CLASS ACTION ALLEGATIONS

39.     Ms. Robinson brings this action pursuant to Rule 23(b)(2) and (3) of the Federal Rules of Civil Procedure on behalf of herself and all other similarly situated Georgia Citizens (the "Georgia Class"), defined as follows:

> All consumers who purchased the Products within the State of Georgia.
>
> Excluded from the Georgia Class is anyone who received a refund, as well as any of Best Buy's officers, directors, or employees; officers, directors, or employees of any entity in which Best Buy

currently has or has had a controlling interest; and Best Buy's legal representatives, heirs, successors, and assigns.

40.     Additionally, Ms. Robinson brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and similarly situated individuals within certain States (the "Multi-State Class"), defined as follows:

> All consumers who purchased the Products in California, Florida, Georgia, Illinois, Massachusetts, Michigan, Minnesota, New Jersey, New York, North Carolina, Ohio, and Washington.
>
> Excluded from the Multi-State Class are any of Best Buy's officers, directors, or employees; officers, directors, or employees of any entity in which Best Buy currently has or has had a controlling interest; and Best Buy's legal representatives, heirs, successors, and assigns.

41.     The Georgia Class and Multi-State Class are referred to collectively as the "Classes."

42.     Ms. Robinson reserves the right to later alter the Classes' definitions in any manner allowed by law.

43.     At this time, Ms. Robinson does not know the exact number of members of the Classes; however, based on Best Buy's sales, market research, and publicly available information, Ms. Robinson believes that the number of members of the Classes are so numerous that joinder of all members is impractical. Best Buy is a major player in the power bank market.

44.     Questions of law and fact common to the members of the Classes that predominate over questions that may affect individual Class members include:

> a.   Whether the Products are capable of delivering the mAh Best Buy claims;
>
> b.   Whether Best Buy misrepresented the Products' mAh ratings;
>
> c.   Whether Best Buy's conduct was unfair and/or deceptive;

    d.   Whether Best Buy has been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for Best Buy to retain the benefits conferred upon Best Buy by Ms. Robinson and the Classes;

    e.   Whether Best Buy's conduct constitutes a breach of express warranty;

    f.   Whether Best Buy violated state consumer protection laws;

    g.   Whether Ms. Robinson and the Classes have sustained damages and, if so, the proper measure thereof;

    h.   Whether Ms. Robinson and the Classes are entitled to restitution, and if so, the proper measure thereof; and

    i.   Whether Best Buy should be enjoined from continuing to sell the Products as currently labeled.

45.    Ms. Robinson's claims are typical of those of the Classes. Like all members of the Classes, Ms. Robinson purchased Best Buy's Products bearing the claim that the Product's ability to deliver mAh was greater than it really is. And like all Class Members, Ms. Robinson sustained damages from Best Buy's wrongful conduct. There is nothing unusual or distinct about Ms. Robinson's claims compared with others who meet the class definitions.

46.    Ms. Robinson will fairly and adequately protect the interests of the Classes, and has retained counsel experienced in complex consumer products class actions. Ms. Robinson has no interests which conflict with those of the Classes.

47.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

48.     No member of the Classes has a substantial interest in individually prosecuting a separate action. The damages for each individual member of the Classes likely will be relatively small compared with the costs of this complex litigation. Thus, absent a class mechanism, it would be virtually impossible for class members to obtain an effective remedy.

49.     The prerequisites to maintaining a class action for injunctive or equitable relief are met, as Best Buy has acted or refused to act on grounds generally applicable to the members of the Classes, thereby making appropriate final injunctive or equitable relief with respect to the Classes as a whole.

50.     The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Best Buy. For example, one court might enjoin Best Buy from selling any Products, whereas another might require label changes. Additionally, individual actions could be dispositive of the interests of the members of the Classes even where certain members of the Classes are not parties to such actions.

51.     Best Buy's conduct is generally applicable to the Classes as a whole and Ms. Robinson seeks, inter alia, equitable remedies with respect to the Classes. As such, Best Buy's systematic policies and practices make declaratory relief with respect to the Classes as a whole appropriate.

## CAUSES OF ACTION

### Count I: Violations of Georgia's Uniform Deceptive Trade Practices Act (Ga. Code Ann. § 10-1-370, *et seq*.) on Behalf of the Georgia Class

52.     Ms. Robinson incorporates by reference and realleges herein all paragraphs alleged above.

53.     Best Buy, Ms. Robinson and the other members of the Georgia Class are "persons" within the meaning of the Georgia Uniform Deceptive Trade Practices Act ("UDTPA"), Ga. Code Ann. § 10-1-371(5).

54.     The Georgia UDTPA prohibits any "deceptive trade practices," which includes, inter alia:  1) misrepresenting the "standard, quality, or grade" of goods or services; 2) representing that goods or services have "characteristics . . . uses, benefits, or quantities that they do not have[;]" 3) "[a]dvertis[ing] goods or services with intent not to sell them as advertised[;]" or 4) "[e]ngag[ing] in any other conduct which similarly creates a likelihood of confusion or of misunderstanding."  Ga. Code Ann. § 10-1-372(a).

55.     Best Buy affirmatively misrepresented the Products' mAh -- a material fact that Best Buy knew to be false.  Best Buy's deceptive conduct violates the Georgia UDTPA by 1) misrepresenting the "standard, quality, or grade" of the Products; 2) representing that the Products have "characteristics . . . uses, benefits, or quantities that they do not have[;]" 3) "[a]dvertis[ing] [the Products] with intent not to sell them as advertised[;]" or 4) "[e]ngag[ing] in any other conduct which similarly creates a likelihood of confusion or of misunderstanding."

56.     Best Buy's acts and practices were immoral, unethical, oppressive and unscrupulous.

57.     Best Buy's conduct was substantially injurious to consumers. Such conduct has caused and continues to cause substantial injury to consumers because consumers would not have paid as high a price for the Products, or bought the products at all, but for Best Buy's false promotion of the Products' mAh.

58.     Ms. Robinson has overpaid for the Products, and such injury is not outweighed by any countervailing benefits.

59.     Best Buy's conduct does not benefit consumers. Because reasonable consumers are deceived by Best Buy's representations of the Products and they were injured as a result, consumers could not have reasonably avoided such injury.

60.     Best Buy's unfair practices directly, foreseeably, and proximately caused Ms. Robinson and the Georgia Class to suffer ascertainable losses as described in Paragraph 57 above.

61.     Ms. Robinson and the other members of the Georgia Class seek an order pursuant to Ga. Code Ann. § 10-1-373 enjoining Best Buy's unfair and/or deceptive acts or practices, awarding them their costs and attorneys' fees, and any other just and proper relief available under the Georgia UDTPA.

**Count II: Violations of Georgia's Uniform
Deceptive Trade Practices Act (Ga. Code Ann. §
10-1-390, *et seq*.) on Behalf of the Georgia Class**

62.     Ms. Robinson incorporates by reference and realleges herein all paragraphs alleged above.

63.     The Georgia Fair Business Practices Act ("Georgia FBPA") declares "[u]fair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful.  Ga. Code Ann. § 10-1-393(a).

64.     In the course of its business, Best Buy, through its agents and/or employees, violated the Georgia FBPA.

65.     Best Buy affirmatively misrepresented the Products' mAh -- a material fact that Best Buy knew to be false.  In so doing, and by marketing, offering for sale, and selling the Products, Best Buy engaged in one or more of the following unfair or deceptive acts or practices as defined in Ga. Code Ann. § 10-1-393(b): 1) "[r]epresenting that goods or services have . . . characteristics, uses, benefits, or quantities that they do not have[;]" 2) "[r]epresenting that goods

13

or services are of a particular standard, quality, or grade . . . if they are of another;" and 3) "[a]dvertising goods or services with intent not to sell them as advertised[.]"

66.     Best Buy's acts and practices were immoral, unethical, oppressive and unscrupulous.

67.     Best Buy had an ongoing duty to Ms. Robinson and the other Georgia Class members to refrain from unfair and deceptive practices under the Georgia FBPA in the course of its business.  Specifically, Best Buy owed Ms. Robinson and the other Georgia Class members a duty to disclose all of the material facts concerning the Products' mAh because Best Buy possessed exclusive knowledge and intentionally concealed it from Ms. Robinson and the other members of the Georgia Class, and/or made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

68.     Ms. Robinson and the other Georgia Class members suffered ascertainable loss and actual damages as a direct and proximate result of Best Buy's concealment, misrepresentations, and/or failure to disclose material information.

69.     Best Buy's conduct was substantially injurious to consumers. Such conduct has caused and continues to cause substantial injury to consumers because consumers would not have paid as high a price for the Products, or bought the products at all, but for Best Buy's false promotion of the Products' mAh.

70.     Ms. Robinson has overpaid for the Products, and such injury is not outweighed by the countervailing benefits.

71.     Best Buy's violations present a continuing risk to Ms. Robinson and the other members of the Georgia Class, as well as to the general public.  Best Buy's unlawful acts and practices complained of herein affect the public interest.

72.     Pursuant to Ga. Code Ann. § 10-1-399, Ms. Robinson and the other members of the Georgia Class seek an order:  1) enjoining Best Buy's unfair and/or deceptive acts or practices; 2) awarding general and punitive damages in an amount to be proven at trial; 3) awarding costs and attorneys' fees; and 4) awarding any other just and proper relief available under the Georgia FBPA.

73.     On July 9, 2019, Ms. Robinson sent a letter to Best Buy complying with Ga. Code Ann. § 10-1-399(b).  Because Best Buy failed to remedy its unlawful conduct within the requisite time period, Ms. Robinson seeks all damages and relief to which Ms. Robinson and the other Georgia Class members are entitled.

### Count III: Violation of Materially Identical State Consumer Protection Statutes on Behalf of the Multi-State Class

74.     Ms. Robinson incorporates by reference and realleges herein all paragraphs alleged above.

75.     Best Buy is engaged in trade and commerce when it advertises, distributes and sells the Products to consumers nationwide.

76.     As fully alleged above, Best Buy's representations about the mAh of the Products were material to a reasonable consumer and were likely to affect consumer decisions and conduct.

77.     Best Buy has used and employed unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce.

78.     Best Buy's acts and practices are immoral, unethical, oppressive and unscrupulous.

79.     Best Buy's conduct was substantially injurious to consumers. Such conduct has caused and continues to cause substantial injury to consumers because consumers would not

have paid as high a price for the Products, or bought the products at all, but for Best Buy's false promotion of the Products' mAh.

80.     But for its deceptive mAh representations, Best Buy could not have charged as high a price as it did.

81.     Ms. Robinson has overpaid for the Products, and such injury is not outweighed by any countervailing benefits.

82.     Best Buy's conduct does not benefit consumers. Because reasonable consumers are deceived by Best Buy's representations of the Products and they were injured as a result, consumers could not have reasonably avoided such injury.

83.     Best Buy's practices constitute unfair competition or unfair, unconscionable, deceptive, or unlawful acts or business practices in violation of at least the following state consumer protection statutes:

a.     **California Consumer Legal Remedies Act**, Cal. Civ. Code § 1750, et seq.,

b.     **California Unfair Competition Law**, Cal. Bus. & Prof. Code § 17200, et seq.;

c.     **Florida Deceptive and Unfair Trade Practices Act**, Fla. Stat. § 501.201, et seq.;

d.     **Georgia's Uniform Deceptive Trade Practices Act**, Ga. Code Ann. § 10-1-370, et seq.;

e.     **Georgia's Unfair Business Practices Act**, Ga. Code Ann. § 10-1-390, et seq.;

f.     **Illinois Consumer Fraud and Deceptive Business Practices Act**, 815 Ill. Comp. Stat. § 505/1, et seq.;

g.     **Massachusetts Regulation of Business Practices for Consumers' Protection Act**, Mass. Gen. Laws Ann. ch. 93A, § 1 et seq.;

h.   **Michigan Consumer Protection Act**, Mich. Comp. Laws § 445.901 et seq.;

i.   **Minnesota Uniform Deceptive Trade Practices Act**, Minn. Stat. § 325D.43 et seq.;

j.   **New Jersey Consumer Fraud Act**, N.J. Stat. Ann. § 56:8-1, et seq.;

k.   **New York Deceptive Acts and Practices Act**, N.Y. Gen. Bus. Law § 349, et seq.;

l.   **North Carolina Unfair and Deceptive Trade Practices Act**, N.C. Gen. Stat. § 75-1.1(a).

m.   **Ohio's Consumers Sales Practice Act**, Ohio Revised Code § 1345, et seq.

n.   **Washington Consumer Protection Act**, Wash. Rev. Code § 19.86.010, et seq.;

84.   Best Buy's unfair practices directly, foreseeably, and proximately caused Ms. Robinson and the Multi-State Class to suffer ascertainable losses as described in Paragraph 79 above.

### Count IV: Breach of Express Warranty on Behalf of the Georgia Class

85.   Ms. Robinson incorporates by reference and realleges herein all paragraphs alleged above.

86.   Best Buy is and was at all relevant times a "merchant" with respect to the Products, under inter alia, O.G.C.A. § 11-2-104(1), and "sellers" of the Products under inter alia, O.G.C.A. § 11-2-103(1)(d).

87.   The Products are and were at all relevant times "goods" within the meaning of, inter alia, O.G.C.A. §§ 11-2-105(1) and 11-9-102(a)(45).

88.     Best Buy's representations regarding the Products' mAH—made in writing on the face of the packaging as to a material term of the transaction— constituted an express warranty as affirmations of fact.

89.     Ms. Robinson and members of the Georgia Class purchased the Products, believing that they conformed to the express warranties pertaining to the Products' mAh.

90.     Best Buy's express warranties formed a basis of the bargain that was reached when Ms. Robinson and the other members of the Georgia Class purchased the Products.

91.     Best Buy breached its express warranties about the Products within the meaning, inter alia, of O.G.C.A. § 11-2-313(1), as described above, because the Products' mAh was lower than Best Buy represented.

92.     Ms. Robinson and the other members of the Georgia Class reasonably relied on Best Buy's express warranties concerning the Products' mAh.

93.     However, as described above, and unknown to Ms. Robinson and the members of the Georgia Class, the mAh of the Products is substantially less than what Best Buy represents on the Products' packaging and in its advertising for the Products.

94.     As a result of Best Buy's breaches of express warranty, Ms. Robinson and the other members of the Georgia Class were damaged in the amount of the purchase price they paid for the Products, or the difference between the value of the Products accepted by Ms. Robinson and the putative class members and the value of the Products if they had the actual warranted mAh.

95.     Among other things, Ms. Robinson and members of the Georgia Class did not receive the benefit of the bargain and have suffered other injuries as detailed above.

96.     On July 9, 2019, Ms. Robinson, on behalf of herself and the other members of the Georgia Class, placed Best Buy on notice thereof.

### Count V: Breach of Express Warranty on Behalf of the Multi-State Class

97.     Ms. Robinson incorporates by reference and realleges herein all paragraphs alleged above.

98.     Best Buy's representations regarding the Products' mAH constitute affirmations of fact.

99.     Best Buy's representations that the Products' mAh is greater than it really is relates to the goods and became part of the basis of the bargain between Best Buy and purchasers of the Products.

100.    Best Buy's representations—made in writing on the face of the packaging as to a material term of the transaction—constituted an express warranty.

101.    Ms. Robinson and members of the Multi-State Class purchased the Products, believing that they conformed to the express warranties pertaining to the Products' mAh.

102.    Best Buy breached its express warranties about the Products because the Products' actual mAh was lower than Best Buy represented.

103.    As a result of Best Buy's breaches of express warranty, Ms. Robinson and the other members of the Multi-State Class were damaged in the amount of the purchase price they paid for the Products, or the difference between the value of the Products accepted by Ms. Robinson and the putative class members and the value of the Products if they had the actual warranted mAh.

104.    Among other things, Ms. Robinson and the members of the Multi-State Class did not receive the benefit of the bargain and have suffered other injuries as detailed above.

105.    Moreover, had Ms. Robinson and the members of the Multi-State Class known the true facts, they either would not have purchased the Products, or would not have been willing to pay the price Best Buy charged for the Products.

**Count IV: Unjust Enrichment on Behalf of the
Classes**

106.    Ms. Robinson incorporates by reference and re-alleges herein all paragraphs alleged above.

107.    Ms. Robinson and the members of the Classes conferred benefits on Best Buy by purchasing the Products and paying a greater price for them than they would have if Best Buy had truthfully represented the Products' mAh.

108.    Best Buy has knowledge of such benefits.

109.    Best Buy's representations that the mAh is greater than it actually is constitutes an affirmation of fact that is part of the basis of the bargain between Best Buy and purchasers of the Products.

110.    Best Buy made its representations to induce Ms. Robinson and the members of the Classes to purchase, purchase more of, or pay more for the Products than they otherwise would have.  Ms. Robinson and the members of the Classes relied on these representations in purchasing the Products.

111.    Best Buy was enriched at the expense of Ms. Robinson and the other members of the Classes, thereby creating a quasi-contractual obligation on Best Buy to restore those ill-gotten gains to Ms. Robinson and the members of the Classes.

112.    Under the circumstances, it would be against equity and good conscience to permit Best Buy to retain the ill-gotten benefits that it received from Ms. Robinson and the other

members of the Classes, in light of the fact that the Products were not what Best Buy purported them to be.

113.   Best Buy must make restitution.

114.   Ms. Robinson and the members of the Classes are entitled to recover damages and other appropriate relief.

### PRAYER FOR RELIEF

115.   Ms. Robinson demands judgment on behalf of herself and the Class as follows:

    a.   An Order certifying the proposed Classes; appointing Ms. Robinson as the representative of the Classes; and appointing Ms. Robinson's undersigned counsel as Class counsel for the Classes;

    b.   An Order requiring that Best Buy pay for notifying members of the Class of the pendency of this suit;

    c.   An order requiring proper, complete, and accurate labeling of the Products;

    d.   Monetary damages, and statutory damages in the maximum amount provided by law;

    e.   Punitive damages in accordance with proof and in an amount consistent with applicable precedent;

    f.   An order requiring Best Buy to disgorge, for the benefit of Ms. Robinson and the members of the Classes, all or part of the ill-gotten revenue it received from the sale of the Products, or make full restitution thereof to Ms. Robinson and the other members of the Classes;

    g.   An order awarding Ms. Robinson and the other members of the Class the reasonable costs and expenses of suit, including their attorneys' fees;

h.  An order awarding Ms. Robinson and the other members of the Class pre- and post-judgment interest in the maximum amount provided by law;

i.  An order enjoining Best Buy's unlawful and deceptive acts and practices; and

j.  Any further relief that the Court may deem appropriate.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Ms. Robinson hereby demands a trial by jury on all issues.

Date: June 26, 2020                    Respectfully submitted,

/s/ E. Michelle Drake
E. Michelle Drake (MN Bar No. 387366)
Joseph C. Hashmall (MN Bar No. 392610)
**BERGER MONTAGUE PC**
43 SE Main Street, Suite505
Minneapolis, MN 55414
Phone: 612-594-5933
Email: emdrake@bm.net
         jhashmall@bm.net

/s/ William F. Cash III
William F. Cash III (*pro hac vice* forthcoming)
Matthew D. Schultz (*pro hac vice* forthcoming)
Brenton J. Goodman (*pro hac vice* forthcoming)
**LEVIN, PAPANTONIO, THOMAS,**
**MITCHELL, RAFFERTY & PROCTOR, P.A.**
316 South Baylen Street, Suite 600
Pensacola, FL 32502
Phone: 850-435-7059
Email: bcash@levinlaw.com
         mschultz@levinlaw.com
         bgoodman@levinlaw.com

/s/ D. Greg Blankinship
D. Greg Blankinship (*pro hac vice* forthcoming)
**FINKELSTEIN, BLANKINSHIP,**
**FREI-PEARSON & GARBER, LLP**

445 Hamilton Ave, Suite 605
White Plains, NY 10601
Phone: 914-298-3290
Email: gblankinship@fbfglaw.com

*Attorneys for Kyntasha Robinson*